IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY B. JOHNSON | : | CIVIL ACTION |
| v. | : | |
| JO ANNE B. BARNHART | : | NO. 04-5034 |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                           **July 27, 2005**

      Gregory Johnson asks this Court to reverse and remand the Social Security Administration's denial of Supplemental Security Income (SSI) under Title XVI of the Social Security Act, arguing the Administrative Law Judge (ALJ) did not assign proper weight to Johnson's treating physicians and the Magistrate Judge failed to remand despite new evidence. This Court finds the ALJ's decision to reject the conclusions of Johnson's treating physicians is supported by substantial evidence and a "sentence six new evidence remand"[1] was appropriately denied because the evidence was cumulative and not material. Johnson's objections are denied and U.S. Magistrate Judge Charles B. Smith's Report and Recommendation is adopted. The Commissioner's Motion for Summary Judgment is granted.

**PROCEDURAL HISTORY**

      Johnson filed his first SSI application in January 1997 seeking disability due to a back injury. Johnson filed a second application on May 23, 2002, currently at issue. Rather than reopening his

---

[1] If a claimant presents new and material evidence to the district court which was not previously presented to the ALJ, then the court's only option is to remand to the Commissioner under sentence six of 42 U.S.C. § 405(g).

prior application from January 1997, Johnson amended his onset date to May 23, 2002, the date of filing. (R. 89-92). The state agency denied Johnson's application on October 11, 2002 and Johnson timely filed a request for an ALJ hearing. (R. 93). ALJ Margaret A. Lenzi denied benefits on July 20, 2003. (R. 16-27). Johnson timely filed a request for Appeals Council review. The Appeals Council denied review on August 27, 2004, making the ALJ's decision final. (R. 34-36). Johnson appealed to this Court.

**FACTS**

Johnson was born November 23, 1955. He suffered a back injury in January 1997 when he fell two stories from a ladder. (R. 45). Johnson claims he has chronic back pain radiating throughout his lower extremities and cannot stand for more than thirty minutes at a time. (R. 19). He also states he has diminished concentration and cannot lift more than five to ten pounds because of the pain. Johnson lives with his disabled mother, who performs the household chores and helps Johnson bathe.

Johnson has a high school education and last worked as a service station cashier, but stopped working prior to his 1997 injury. He worked as a computer lab technician from 1984 to 1996, when he was laid off due to lateness. (R. 50-51). Johnson also has past relevant work experience as a security guard, telephone operator and nursing assistant. (R. 53-55).

Johnson has seen several doctors regarding his back pain since 2000. Dr. David Abrams, Johnson's primary care physician, saw Johnson eight times between September 7, 2000 and July 18, 2002. (R. 154-55). Dr. Abrams ordered a nerve conduction study in September 2000 and noted Johnson had a small broad disc herniation at L2 and L3. Johnson returned for several assessment visits from April 4, 2001 to July 18, 2002. (R. 154-55). Dr. Abrams completed a Medical Source

Statement of Functional Abilities and Limitations on May 5, 2003. He listed Johnson's prognosis as poor and stated his pain is severe enough to interfere with his ability to handle work-related stress. (R. 174). Dr. Abrams opined Johnson can only walk less than a block without rest, continuously sit fifteen to twenty minutes, and sit less than two hours in an eight hour day. (R. 174-75).

Dr. Abrams referred Johnson to Dr. Deepak Chugh and Dr. Or Shachar on October 24, 2000 at the MCP Hahnemann Department of Neurology. The neurologists diagnosed Johnson with L5-S1 radiculopathy and chronic alcoholism. (R. 141).[2] Dr. Chugh prescribed Vioxx for Johnson's pain and a subsequent MRI revealed multilevel disc herniations with variable degrees of neural foraminal narrowing. (R. 133).

Dr. Jerry Ginsberg performed a disability evaluation on September 19, 2002, subjecting Johnson to range of motion testing for all major joints. Johnson was capable of performing all maneuvers without restriction and without complaint of pain. Dr. Ginsberg noted Johnson had normal gait, good coordination, no evidence of spinal deformity, and "chronic low back pain by history." (R. 157-58). On a Medical Source Statement Dr. Ginsberg indicated Johnson could frequently lift and carry ten pounds and had no limitations standing, walking, sitting, pushing, and pulling. (R. 159-160).

Dr. Abrams also referred Johnson to Dr. David Tabby of Drexel Neurological Associates, who examined Johnson on September 24, 2002. Dr. Tabby found Johnson was in no acute distress and had a normal range of motion of the cervical and lumbar spines. Dr. Tabby diagnosed Johnson with multilevel disc herniations and noted "[Johnson] has few neurological findings; his complaints are related mainly to pain." (R. 129).

---

[2] Johnson stated he drank a six pack of beer and smoked half a pack of cigarettes each day.

On April 8, 2003, Dr. James Abdelhak, a member of Drexel Neurological Associates along with Dr. Tabby, completed a Clinical Assessment of Pain multiple choice form. The form indicated Johnson's pain was severe enough to preclude adequate performance of daily activities or work. Dr. Abdelhak opined Johnson's pain will remain a significant part of his life, despite the prospect of decreased pain in the future. (R. 169-170).

**DISCUSSION**

Johnson argues the ALJ gave insufficient weight to his treating physicians, Dr. Abrams and Dr. Abdelhak, and improperly denied his "sentence six new evidence remand." This Court reviews *de novo* Johnson's objections to the Report and Recommendation. 28 U.S.C § 636(b)(1). This Court must uphold the ALJ's factual determinations supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Where an agency's fact-finding is supported by substantial evidence, "reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings of fact." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1191 (3d. Cir. 1986).

In determining whether substantial evidence exists, this Court may not weigh the evidence or substitute its own conclusions for that of the ALJ. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, even if it would have decided the factual inquiry differently. *Fargnoli v. Massanari*,

247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). At the same time, however, this Court must remain mindful that "leniency [should] be shown in establishing claimant's disability." *Reefer*, 326 F.3d at 379 (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

To establish a disability under the Social Security Act, Johnson must demonstrate there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." 42 U.S.C. § 423 (a)(1)(D)(2002).[3] There are two ways Johnson could establish such a disability. He may produce medical evidence he is disabled *per se* as a result of meeting or equaling certain listed impairments.[4] Johnson alternatively may demonstrate an inability to engage in any substantial activity "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Johnson does not meet any listed impairments to establish a disability. Johnson, therefore,

---

[3] Regulation 20 C.F.R. 416.972 defines substantial gainful activity as follows: Substantial gainful activity is work activity that is both substantial and gainful: (a) Substantial work activity is work activity that involves doing significant physical or mental activities. Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. (b) Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

[4] The listed impairments to prove disability *per se* are set forth in 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1987).

247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). At the same time, however, this Court must remain mindful that "leniency [should] be shown in establishing claimant's disability." *Reefer*, 326 F.3d at 379 (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

To establish a disability under the Social Security Act, Johnson must demonstrate there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." 42 U.S.C. § 423 (a)(1)(D)(2002).[3] There are two ways Johnson could establish such a disability. He may produce medical evidence he is disabled *per se* as a result of meeting or equaling certain listed impairments.[4] Johnson alternatively may demonstrate an inability to engage in any substantial activity "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Johnson does not meet any listed impairments to establish a disability. Johnson, therefore,

---

[3] Regulation 20 C.F.R. 416.972 defines substantial gainful activity as follows: Substantial gainful activity is work activity that is both substantial and gainful: (a) Substantial work activity is work activity that involves doing significant physical or mental activities. Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. (b) Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

[4] The listed impairments to prove disability *per se* are set forth in 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1987).

must demonstrate his impairments do not permit him to engage in any substantial gainful work in the national economy. In determining whether he is disabled under the regulations, the ALJ used a five-step evaluation. 20 C.F.R. § 416.920.[5] The ALJ found at step one, Johnson has not engaged in substantial gainful activity since his alleged disability onset. (R. 17). At steps two and three, the ALJ found Johnson's degenerative disc disease is a "severe" impairment that does not meet or equal a listed impairment. (R. 18-19). At step four, the ALJ accepted the vocational expert's testimony that Johnson could not return to his prior work. The ALJ concluded Johnson has the residual functional capacity to perform light work. (R. 24). The ALJ at step five, once again relying on the vocational expert's testimony, found there are a substantial number of jobs in the national economy which Johnson could perform and he, therefore, is not disabled. (R. 25).

Johnson argues the ALJ improperly rejected the opinions of Dr. Abrams and Dr. Abdelhak. Controlling weight is generally given to the findings and opinions of treating physicians. 20 C.F.R § 416.927(d)(2); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Treating physicians' opinions may be rejected "only on the basis of contradictory medical evidence," although the opinion may be accorded "more or less weight depending upon the extent to which supporting explanations

---

[5] The five-step evaluation is:
1. If the claimant is performing substantial gainful work, he is not disabled. 2. If the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled. 3. If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry. 4. If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled. 5. Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

are provided." *Plummer*, 186 F.3d at 429. The ALJ may reject a physician's statement of disability if there is a lack of data supporting it. *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (holding ALJ justified in rejecting treating physician's unsupported medical conclusions). The ALJ may also reject a physician's statement of disability if there is contrary medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) (stating treating physician's opinion may be given no weight by ALJ if opinion is contrary to substantial medical evidence). A treating physician's opinion is given controlling weight only when it is well-supported and consistent with the other evidence on record. 20 C.F.R. § 416.927(d)(2).

Johnson specifically argues the ALJ did not provide "good reasons" for rejecting Dr. Abrams's opinion. This Court disagrees. The ALJ thoroughly considered Dr. Abrams's observations and treatment of Johnson and provided several valid reasons for discrediting the weight given to Dr. Abrams. For example, Dr. Abrams's May 5, 2003 Medical Source Statement of Functional Abilities and Limitations form was a "fill in the blank" multiple choice assessment. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Dr. Abrams provided no explanation regarding his assessment and, therefore, less deference was afforded.[6]

The ALJ further states Dr. Abrams is a primary care provider and not a specialist in neurology. (R. 23). The regulations provide an ALJ should generally give more weight to the opinions of a specialist in the areas of a claimant's impairment, rather than one who is not a specialist. 20 C.F.R. § 416.927(d)(6). The ALJ also notes Johnson visited Dr. Abrams on numerous

---

[6]In his assessment, Dr. Abrams opined Johnson is incapable of lifting or carrying ten pounds, incapable of standing, walking or sitting for two hours out of eight, requires unscheduled work breaks every thirty minutes and three or more absences from work per month. (R. 22).

occasions, but all visits were for either medication refills or to complete disability forms. No details were provided regarding Johnson's complaints of pain, with the exception of his May 5, 2003 assessment. The ALJ states in her decision, "the opinion appears to be based primarily, if not solely, upon the claimant's assertions and complaints." (R. 23). Johnson claims in his objections, Dr. Abrams's decision is based on objective medical signs demonstrating four lumbar disc herniations, not merely on Johnson's subjective complaints. This objective evidence is from an MRI taken of Johnson's back. Interpretation of an MRI is within the province of a neurologist's expertise, not a primary care physician.

The ALJ found Dr. Abrams's opinion was inconsistent with other medical findings in the record. Dr. Ginsberg and Dr. Chugh, Johnson's treating specialist, found Johnson had full upper and lower extremity muscle strength. (R. 129-143, 156-160). These findings were inconsistent with the limitations Dr. Abrams placed on Johnson's activities in his May 5, 2003 assessment. The ALJ's decision to afford less weight to Dr. Abrams is supported by substantial evidence.

Johnson also argues the ALJ "should not have rejected Dr. Abdelhak's [opinion] based primarily on her erroneous view that he was not treating Mr. Johnson." Objections to R&R, p.4. Dr. Abdelhak, a neurologist, opined Johnson suffers from severe pain which will likely remain an incapacitating element in his life. The ALJ, however, did not reject Dr. Abdelhak's opinion solely because he was not a treating physician. The ALJ noted Dr. Abdelhak's opinion was inconsistent with the observations of another neurologist, Dr. Tabby. Dr. Tabby's reports were part of the record before the ALJ, whereas Dr. Abdelhak's were not.

The ALJ only had a pain questionnaire from Dr. Abdelhak, which the ALJ found to be "inconsistent with Dr. Tabby's treating physician observations that the claimant is in 'no acute

8

distress,' 'has few neurological findings,' [and] displays normal cervical and lumbar ranges of motion . . . ." (R. 22). The ALJ also noted Dr. Abdelhak's pain assessment was inconsistent with Dr. Ginsberg's opinion that Johnson had a normal gait and station, good coordination and ambulated without assistance. (R. 22). The ALJ properly weighed Dr. Abdelhak's assessment against other medical evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). There was substantial evidence to support the ALJ's decision to afford less weight to Dr. Abdelhak's opinion.

Johnson lastly argues the Magistrate Judge improperly denied a new evidence remand under 42 U.S.C. § 405(g).[7] The new evidence Johnson refers to is Dr. Abdelhak's November 26, 2002 report. The Third Circuit provided prerequisites for granting such a remand. The "new evidence" must not be merely cumulative of what is already in the record, must be material, and claimant must provide good cause for not having incorporated the new evidence into the administrative record. *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984); *see also Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To otherwise permit a remand would "open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand."

---

[7]Sentence six of 42 U.S.C. § 405(g) states:
The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

*Matthews*, 239 F.3d at 595.

A remand is not warranted here. Dr. Abdelhak's report cannot be considered "new evidence" because its contents are cumulative and almost identical to Dr. Tabby's September 24, 2002 report. Both examination findings and assessments were the same, with both doctors finding bilateral lumbar radiculopathies due to multi-level disc herniations. Dr. Abdelhak's report was also immaterial because the ALJ would reasonably not have changed her decision based on this report. Aside from the report not adding anything new to the record, the ALJ noted inconsistencies between Dr. Abdelhak's pain assessment questionnaire and other medical records.[8] Johnson, consequently, is not entitled to a remand. Accordingly, this Court enters the following:

---

[8] This Court need not address whether claimant had good cause for not presenting this evidence to the ALJ because the report is cumulative and immaterial. The Magistrate Judge, however, noted claimant's attorney was given two opportunities to supplement the record during the ALJ hearing. Both times claimant's counsel failed to notice Dr. Abdelhak's report was missing. (R. 43-44, 82-83).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY B. JOHNSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART | : | NO. 04-5034 |

**ORDER**

AND NOW, this 27th day of July, 2005, after consideration of the pleadings and record, and after review of the Report and Recommendation of United States Magistrate Judge Charles B. Smith, and Plaintiff's objections, it is hereby ORDERED that:

    1. The Report and Recommendation is APPROVED and ADOPTED.

    2. The Plaintiff's motion for summary judgment (docket #10) is DENIED.

    3. The Defendant's motion for summary judgment (docket #11) is GRANTED.

    4. Judgement is entered in favor of Defendant and against Plaintiff.

BY THE COURT:

_____
Juan R. Sánchez. J.